UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.S., a minor,<br><br>                Plaintiff,<br>     v.<br><br>SHORELINE SCHOOL DISTRICT,<br><br>                Defendant. | CASE NO. C24-1360<br><br>ORDER ON ADMINISTRATIVE APPEAL |

Plaintiff A.S., a minor by and through his parents, appeals the Final Order of Administrative Law Judge Pamela Meotti ("ALJ") that found Defendant Shoreline School District's ("District") reevaluation of the Student was proper under the Individuals with Disabilities Education Act. Dkt. No. 1. Plaintiff[1] argues the District failed to adequately assess the Student's sensory and emotional functioning and challenges the Final Order on this basis. Dkt. No. 16. The Court finds that the reevaluation considered both areas in accordance with statutory procedures and requirements. The Court thus affirms the ALJ's finding that the District's reevaluation was appropriate.[2]

---

[1] For clarity, the Court uses "Plaintiff" to refer to the moving party, while "the parents" will refer to actions of the individuals.

[2] Because the Court affirms the Final Order's conclusion that the District's reevaluation complied with the IDEA, the Court does not consider the effect of an inappropriate reevaluation. *See* Dkt. No. 20 at 4.

ORDER ON ADMINISTRATIVE APPEAL - 1

# I. STATUTORY FRAMEWORK

The Individuals with Disabilities Education Act ("IDEA") seeks "to ensure that all children with disabilities have available to them a free appropriate public education[.]" 20 U.S.C. § 1400(d)(1)(A). Upon request of a parent or "a State educational agency, other State agency, or local educational agency[,]" a school district must "conduct a full and individual initial evaluation" to determine whether a child has a disability and the child's educational needs. 20 U.S.C. § 1414(a)(1)(A)–(C). If a child is determined to have a disability and needs special education and related services, a team including a district representative, teachers, parents, and in some cases, the child, formulates an individualized education plan ("IEP"). § 1414(d)(1)(B). The school district must conduct a reevaluation of the child if it "determines that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation," or if a reevaluation is requested by the child's parents or teacher. § 1414(a)(2)(A).

A reevaluation must follow IDEA procedures to determine whether a student has a disability and the nature and extent of the special education and related services that the student needs. 20 U.S.C. § 1414(b)–(c); 34 C.F.R. §§ 300.301–.306; WASH. ADMIN. CODE § 392-172A-03020; *Avila v. Spokane Sch. Dist.*, 852 F.3d 936, 939–40 (9th Cir. 2017). Under these procedures, a "group of qualified professionals selected by the school district" must use a "variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the student, including information provided by the parent … ." WASH. ADMIN. CODE § 392-172A-03020(2). The evaluation must "[n]ot use any single measure or assessment as the sole criterion for determining" a student's eligibility for special education services. WASH. ADMIN. CODE § 392-172A-03020(2)(b). "The student must be assessed in all areas related to the suspected disability." WASH. ADMIN. CODE § 392-172A-03020(3)(e).

ORDER ON ADMINISTRATIVE APPEAL - 2

If parents disagree with an evaluation conducted by the school district, they can request an independent educational evaluation ("IEE") at public expense. WASH. ADMIN. CODE § 392-172A-05005(2)(a). Upon receipt of such a request, the school district can either provide the IEE or "[i]nitiate a due process hearing within fifteen days to show that its evaluation is appropriate." WASH. ADMIN. CODE § 392-172A-05005(2)(c). The state educational agency or local educational agency hears due process complaints in administrative due process hearings. 20 U.S.C. § 1415(f)(1)(A). If the school district initiates a due process hearing in response to an IEE request and "the final decision is that the district's evaluation is appropriate, the parent still has a right to an [IEE], but not at public expense." WASH. ADMIN. CODE § 392-172A-05005(3). If a party disagrees with the administrative findings and decision, the IDEA allows for judicial review in state courts and federal district courts. 20 U.S.C. § 1415(i)(2)(A).

## II. BACKGROUND

### A. Factual Background

In 2022, the District conducted an initial special education evaluation of the Student and found the Student eligible for special education services under the Autism disability category. Administrative Record ("AR") at 1407–31.[3] Specifically, the Student was eligible for Specially Designed Instruction ("SDI") in social-emotional skills. AR at 1410. On October 12, 2023, the District requested parental consent for a reevaluation of the Student. AR at 1320. The parties agreed that the Student would be reevaluated in the following areas: communication, fine motor, daily/living adaptive, social/emotional, and medical-physical. AR at 1320–21.

On December 20, 2023, an evaluation group meeting took place to discuss and finalize the reevaluation report. AR at 1323. The parties agreed to extend the reevaluation timeline to consider

---

[3] The Court cites to the Administrative Record ("AR") where available. *See* Dkt. No. 13.

additional evidence from the parents. AR at 1356. On January 18, 2024, the final reevaluation report ("Report") was sent to the parents. AR at 1317.

The Report concluded that the Student "is no longer eligible for Special Education services at this time. A Section 504 plan is recommended at this time to meet [the Student's] needs." AR at 1324. Along with the Report, the District sent a Prior Written Notice confirming the District's decision that the Student was no longer eligible for special education services because "[e]valuation results did not indicate an adverse impact in the education setting nor a need for specially designed instruction[.]" AR at 1355.

**B.     Procedural Background**

In response to the Report and Prior Written Notice, the parents requested an IEE at public expense. AR at 379. In response, the District requested a special education due process hearing with the Office of Administrative Hearings "to demonstrate the appropriateness of its reevaluation." *Id.* The due process hearing occurred on May 29 and 30, 2024. Dkt. No. 1 at 12. After hearing testimony, admitting exhibits, and considering post-hearing briefing, the ALJ issued a Final Order on July 31, 2024 ("Final Order"). *Id.* at 41.

On August 28, 2024, Plaintiff filed this case appealing the Final Order. Dkt. No. 1. The parties agreed that the case could be resolved based on the administrative record and briefing. Dkt. No. 8. Briefing is complete (Dkt. Nos. 16, 17, 20) and the matter is ripe for the Court's consideration.

## III.   ANALYSIS

**A.     Legal Standard and Scope of Review**

The IDEA allows a party aggrieved by the findings and decision made at a due process hearing to bring a civil action. 20 U.S.C. § 1415(i)(2)(A). Unlike judicial review of other agency actions, courts in IDEA cases review *de novo* whether, based on a preponderance of evidence, a

school district has complied with the IDEA. *M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017). The Court can use its discretion to give "due weight" to "thorough and careful" factual findings of the ALJ or "judgments of education policy." *L.A. Unified Sch. Dist. v. A.O. by & through Owens*, 92 F.4th 1159, 1168 (9th Cir. 2024). Because a court must "actually examine the record" to determine whether an ALJ's findings of fact are entitled to deference (*M.C.*, 858 F.3d at 1194 n.1), and neither party identifies any "judgments of education policy" that require deference (*A.O.*, 92 F.4th at 1168), the Court reviews the administrative record *de novo*.

The question before the Court is the same question that was before the ALJ: "whether the District's most recent evaluation of the Student was appropriate[.]" Dkt. No. 1 at 13. As acknowledged by Plaintiff (Dkt. No. 20 at 4), the question is not whether the substantive eligibility decision by the District was correct. *See E.P. by & through J.P. v. Howard Cnty. Pub. Sch. Sys.*, No. CV ELH-15-3725, 2017 WL 3608180, at *18 (D. Md. Aug. 21, 2017) ("The IEP team's eligibility determination is not relevant to the question of whether the HCPSS Evaluation was appropriate."), *aff'd sub nom. E.P. v. Howard Cnty. Pub. Sch. Sys.*, 727 F. App'x 55 (4th Cir. 2018).

On judicial review of an administrative decision, "the appellant bears the burden of demonstrating that the ALJ's decision was incorrect." *Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048, 1053 (9th Cir. 2022). Plaintiff appeals the ALJ's finding that the District's reevaluation of the Student's sensory and emotional functioning was appropriate. *See generally* Dkt. No. 16. The Court discusses each category of reevaluation in turn, but begins by addressing Plaintiff's argument about the appropriateness of the school nurse's testimony.

### B.  The School Nurse's Testimony Was Appropriately Considered.

Plaintiff argues the ALJ wrongly permitted testimony from the school nurse, Ms. Morray, because the District did not list Ms. Morray as a witness in accordance with the ALJ's prehearing order. Dkt. No. 16 at 37–38, Dkt. No. 20 at 15–16. Plaintiff listed Ms. Morray as a witness (AR at 1404) and the District listed any witness called by Plaintiff on its witness list (AR at 1397). Plaintiff does not provide any authority that supports excluding Ms. Morray's testimony, and the Court finds Ms. Morray's testimony was properly considered by the ALJ. *See* WASH. ADMIN. CODE § 10-08-200 (authority of the ALJ to manage hearings). Further, even if Ms. Morray's testimony should not have been admitted, Plaintiff fails to explain how excluding her testimony would undermine the appropriateness of the District's evaluation, and subsequently the ALJ's decision. As a result, the Court rejects Plaintiff's argument that admission of Ms. Morray's testimony is grounds for reversing the ALJ's decision.

### C.  The District Properly Evaluated the Student's Sensory Functioning.

Plaintiff argues the District failed to sufficiently evaluate the Student in various areas of sensory functioning.[4] Dkt. No. 16 at 29–33. But each source of information cited by the Plaintiff as relevant to the Student's sensory functioning was explicitly reviewed and incorporated into the Report, as admitted by Plaintiff. *Id.* at 30 ("The Parents' informed suspicions were bolstered and supported by the private [occupational therapy] evaluation, pediatrician note, classroom teacher report, all of which were reviewed but ultimately disregarded when SSD opted against pursuing a sensory evaluation."). Plaintiff's argument thus boils down to the assertion that a standardized test or "formal assessment," in the form of the Sensory Profile or Sensory Processing Measure, must

---

[4] Neither party defines "sensory functioning" but the private occupational therapy report states: "The term sensory processing refers to a child's sensory processing (e.g. response to tactile, vestibular, proprioceptive, visual, taste, smell, temperature)." AR at 1382.

have been performed by the District to meet its reevaluation duty. *Id.* at 30–33, Dkt. No. 20 at 2–4. Plaintiff makes three arguments to support such a requirement, and each fails.[5]

First, Plaintiff argues that under the Ninth Circuit's decision in *Timothy O. v. Paso Robles Unified School District*, 822 F.3d 1105 (9th Cir. 2016), "a school district's failure to administer a formal assessment to evaluate Student's suspected disability was a violation of its obligations under the IDEA." Dkt. No. 20 at 2. But that decision does not require a standardized test or specific form of assessment. Instead, the court held in *Timothy O.* that "informal observation" alone did not meet the IDEA's assessment requirement. 822 F.3d at 1122. Specifically, the court held the school district violated the IDEA's procedural requirements because:

> At the time of Luke's initial evaluation, Paso Robles was aware that Luke displayed signs of autistic behavior, and therefore, autism was a suspected disability for which it was required to assess him. It chose, however, not to formally assess him for autism because a member of its staff opined, after an informal, unscientific observation of the child, that Luke merely had an expressive language delay, not a disorder on the autism spectrum.

*Id.* at 1109. The court's use of "formal assessment" and "test" also do not require school districts to use standardized tests, like those Plaintiff argues for here. Instead, those terms were used to contrast the Paso Robles district's use of a mere informal observation. *See id.* at 1114 ("Rather than schedule a formal assessment for that condition, however, Peck merely observed Luke in order to advise Paso Robles' staff whether it needed to conduct a full and formal test for autism."). Here, the District did a formal assessment of the Student's sensory functioning by having various

---

[5] In reply, Plaintiff relies on a provision of the Washington Administrative Code which states: "[i]f properly validated tests are unavailable, each member of the group shall use professional judgment to determine eligibility based on other evidence of the existence of a disability and need for special educational services." Dkt. No. 20 at 2 (citing WASH. ADMIN. CODE § 392-172A-03020). The Court does not consider arguments raised for the first time in reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Moreover, Plaintiff's novel argument that standardized tests must be used whenever they are available would conflict with the IDEA's directive to "not use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability or determining an appropriate educational program for the child." 20 U.S.C. § 1414(b)(2)(B), *see also KW v. Peninsula Sch. District*, No. 3:24-CV-05820-BAT, 2025 WL 1592450, at *14–15 (W.D. Wash. June 5, 2025) (rejecting argument that district reevaluation had to consider new standardized testing).

ORDER ON ADMINISTRATIVE APPEAL - 7

professionals review the private occupational therapy ("OT") report, pediatrician report, and classroom teacher report, and review toileting data provided by the parents, IEP records, and interview the parents and the classroom teacher, in addition to performing observations of the Student. AR at 1327, 1330, 1336, 1345. The District did not perform any standardized tests for "sensory functioning" or use the Sensory Profile or Sensory Processing Measure tools, but that does not undermine the ALJ's decision that the District's evaluation of this area of suspected disability was formal and complied with the IDEA's "extensive and carefully drafted procedures" that require "comprehensive and reliable methods." *Timothy O.*, 822 F.3d at 1118, 1121.

Second, Plaintiff argues that, even if a standardized test is not always required, one was required here given the allegedly conflicting conclusions "about [the Student's] sensory related toileting challenges" between the private OT report and the District's other assessment tools. Dkt. No. 16 at 15–16, 33; Dkt. No. 20 at 7. But this argument is not supported by the record. As explained by the District, there was no conflict between the private OT report and the District's other assessments that would indicate a different assessment was required. Dkt. No. 17 at 21. Rather, each District evaluator acknowledged the findings of the private OT report and accepted them as true. AR at 1327–28, 1334, 1336–37, 1346. And the private OT report did not make any recommendations regarding SDI or other education-related needs. *See* AR at 1379–85. The conflict that Plaintiff alleges exists was addressed head-on by School Psychologist Higgins who explained in the daily living/adaptive section conclusion:

> [The Student] demonstrates different adaptive skills in different settings. … While [the Student] is demonstrating continued needs in this area, he is not demonstrating a significant delay at this time in the school setting nor does he demonstrate needs that require intensive instruction. [The Student's] school-related needs in this area can be addressed through general education support, monitoring, and accommodations at this time.

ORDER ON ADMINISTRATIVE APPEAL - 8

AR at 1343. While Plaintiff cites no authority requiring further assessments to resolve conflicts, even if they had, no such conflict is present in the record here.

Lastly, Plaintiff argues that the testimony of its expert, Dr. Enns, supports its argument that the District needed to perform a Sensory Profile assessment to complete an adequate reevaluation. Dkt. No. 16 at 15–16, Dkt. No. 20 at 9. But Dr. Enns's testimony on the necessity of the Sensory Profile is not so clear. Instead, Dr. Enns testified that the Student had "some sensory differences that should have been measured" (AR at 75), that sensory testing is required when a student on the spectrum has a toileting issue (AR at 83), that the Sensory Profile can help understand and gauge what the Student's feelings are (AR at 84–85), and that the reevaluation "wasn't sensitive enough" (AR at 90). But Dr. Enns's testimony does not connect the lack of Sensory Profile with an insufficient reevaluation and, in fact, Dr. Enns stated, "it's not like there is a lack of information." AR at 94–95. Taken in full, Dr. Enns's testimony represents a disagreement with the outcome of the reevaluation, not that the reevaluation failed to comply with the IDEA. AR at 96 (Dr. Enns agreeing that "there is a lot of information here" and that his concern is with "how it has been used").

In light of the reports, data, and observations included in the District's reevaluation and considering Dr. Enns's complete testimony, the ALJ properly determined that the District sufficiently assessed the Student's sensory functioning.

**D.    The District Properly Evaluated the Student's Emotional Functioning.**

The parties agree that the Student had to be reevaluated in the area of "social/emotional" in 2023. AR at 1321. In 2022, School Psychologist Higgins evaluated the Student in this area through the following assessments: reviewing birth-to-3 records, review of Adaptive Behavioral Assessment ("ABA") records, parent interviews, a teacher interview, two in-person observations, and the Social Responsiveness Scale – 2nd Edition ("SRS-2") completed by the parents. AR at

1424. In 2023, School Psychologist Higgins evaluated the Student in this area using the following assessments: review of initial special education evaluation, review of private OT evaluation, review of IEP goal progress, interview with private OT, parent interview, teacher interview, observation, and the SRS-2 completed by the parents and the current teacher. AR at 1345. Plaintiff argues the 2023 evaluation was insufficient because it did not address the Student's emotional functioning because the SRS-2 "is a distinctly social assessment tool." Dkt. No. 16 at 34. Plaintiff argues the testimony of Dr. Enns supports that a different assessment on emotional functioning, like the Development Behavior Checklist – Second Edition ("DBC") or Behavior Assessment System for Children – Third Edition ("BASC"), should have been used. *Id.* The District responds that Dr. Enns's testimony, as a whole, supports that its evaluation in the social/emotional area was appropriate. Dkt. No. 17 at 23–25.

The Court has reviewed Dr. Enns's testimony and agrees with the District. It is true that Dr. Enns testified that he felt an emotional assessment was missing from the 2023 reevaluation, that the formal social/emotional assessments were not sensitive enough, and that he would have used additional formal assessments. AR at 72, 76–77, 90. But Dr. Enns also testified repeatedly that interviews with the parents, teachers, and OTs were the "smartest way" to get the allegedly missing emotional information. AR at 74–75. In response to a question from the ALJ, Dr. Enns confirmed that his recommendation for "interviews" referred to regular interviews and not a type of standardized assessment. AR at 94. The reevaluation here included all three types of interviews recommended by Dr. Enns. AR at 1345. Taking this testimony as a whole, and in light of the numerous evaluative measures outlined above, the Court concurs with the ALJ that the reevaluation of the Student's emotional functioning was appropriate.

Plaintiff fails to meet its burden to reverse the ALJ's decision.

ORDER ON ADMINISTRATIVE APPEAL - 10

## IV. CONCLUSION

For these reasons, the Court AFFIRMS the Final Order, GRANTS judgment for Defendant, and DISMISSES this case.

The Clerk is instructed to close the case.

Dated this 26th day of June, 2025.

Kymberly K. Evanson
United States District Judge